# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| **JAMEY RAY CHRISTY,** | ) | |
| **# 225457,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 1:18-cv-00008** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **v.** | ) | |
| | ) | |
| **CHERRY LINDAMOOD,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Jamey Ray Christy, an inmate of the Trousdale Turner Correctional Complex in Hartsville, Tennessee, filed this <u>pro se</u>, <u>in forma pauperis</u> action under 42 U.S.C. § 1983 against South Central Correctional Facility (SCCF) Warden Cherry Lindamood, SCCF Assistant Warden Eric Bryant, SCCF Associate Warden of Operations Danny Dodd, SCCF Chief of Security Ryan Deatherage, SCCF Chief of Unit Management Shane McClain, SCCF Unit Manager Danny Casteel, SCCF Case Manager Jesse James, SCCF Sergeant f/n/u Brantley, SCCF Sergeant f/n/u Bryte, SCCF psychiatrist f/n/u Steadman, SCCF Captain Matthew Villanueva, Core Civic, and the as-yet identified Chief Executive Officer (CEO) and Chief Operating Officer (COO) of Core Civic, alleging violations of the Plaintiff's constitutional and civil rights. (Doc. No. 1).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint filed <u>in forma pauperis</u> that fails to state a claim upon which relief can be granted, is frivolous, or

seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.     Section 1983 Standard

Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983.   Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ."   To state a claim under § 1983, a plaintiff must allege and show two elements:  (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law.  Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

## III.     Alleged Facts

The complaint alleges that, on August 14, 2017, while an inmate of the SCCF in Clifton, Tennessee, the Plaintiff fell "due to Core Civic's negligence in keeping the pod Gemini B clean and safe during a lockdown."  (Doc. No. 1 at 15).   There were no yellow "wet floor" caution signs warning inmates of standing grease and water on the floor.   The Plaintiff sustained injuries during the fall and received medical treatment.  He was prescribed Tylenol, Ibuprofen, x-rays, and therapy. The complaint alleges that the Plaintiff only received Tylenol for three months and a wrist x-ray. He believes that he should receive an x-ray of his back and neck and the prescribed therapy.   In December 2017, the doctor reordered x-rays and therapy for the Plaintiff, but "Core Civic in Nashville" denied the request.  (Id.)  The complaint alleges that the Plaintiff still suffers from pain and numbness on his left side.  He has lost use of two fingers and his thumb on his left hand.  His teeth were also damaged in the fall.  (Id. at 15-16).

On January 8, 2018,  the Plaintiff was told by Unit Manager Casteel and Case Manager James that the Plaintiff would be transferring to another facility soon.  The Plaintiff, who was in protective custody at SCCF, told Casteel and James that he could not be moved to general

population at another facility because his life would be endangered. The Plaintiff gave Casteel and James a list of incompatible inmates at the facilities where he might be transferred. (Doc. No. 1 at 4). They told the Plaintiff that he would be transferred "even if it meant pepper-spraying" him. (Id.)

The Plaintiff filed an emergency grievance regarding his potential transfer on January 10, 2018, and the grievance was deemed "inappropriate" by grievance coordinator Sergeant Staggs and returned "torn, defaced, and missing the goldenrod copy" which prevented the Plaintiff from being able to appeal. (Id. at 5). The Plaintiff sent a copy of his grievance to "the Commissioner's Designee-TDOC Turman" and Roberts in Internal Affairs and did not hear back from either of them. (Id.)

The Plaintiff received notification on January 11, 2018, that he was being transferred to the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. He was "put into such distress that [his] only option was to take a lot of different pills . . . ." (Id.) The Plaintiff was transported to the Wayne County Medical Center for drug overdose and attempted suicide. After receiving treatment, the Plaintiff was returned to SCCF where Dr. Steadman, the prison psychiatrist, failed to keep the Plaintiff for observation; instead, she called the transit van back to pick the Plaintiff up for transfer to HCCF, telling the Plaintiff that he was "alright and was just trying to accomplish a goal." (Id. at 6). The Plaintiff believes that Dr. Steadman failed to observe and treat the Plaintiff in retaliation for his suicide attempt and temporary thwarting of the transfer to HCCF.

Upon arrival at HCCF, the Plaintiff spoke with the facility's medical and mental health staff, and HCCF officials called the SCCF transit van back. The Plaintiff was returned to SCCF, where Captain Villanueva wrote the Plaintiff up for "Defiance," a Class B write-up, for his earlier suicide

attempt.  The Plaintiff was placed in isolated segregation and protective custody where he remains for twenty-three hours daily.  His cell is wet with broken glass on the floor and a loose window; there are also live electrical wires exposed.  The Plaintiff was not permitted to wear shoes in his cell. He asked for sandals so that he would not have to walk on the broken glass and wet floor, and an unidentified corrections officer told the Plaintiff "no, [he] should of not pulled [his] stunt the night before and made them do 2 hours worth of paperwork–referring to [the Plaintiff's] attempted suicide."  (Id. at 7).   The Plaintiff was in his cell for two hours without his shoes.

On January 12, 2018, the Plaintiff was permitted a shower, but the shower stall was broken and had "about 3 inches of sewage water backed up in it."  (Id.)  When an unidentified corrections officer and Sergeant Bryte came to get the Plaintiff, he was having problems "cuffing up" due to the standing water and his disability, which the complaint describes as narcolepsy, "a neurological disorder."  (Id. at 7-8).  The Plaintiff has LAN - Limited Activity Notice from the medical staff stating that he cannot stand for over fifteen minutes and needs a shower chair.   The officers left the Plaintiff standing in the water alone for thirty minutes and told the Plaintiff that, if he didn't like it, he should have stayed at HCCF.  (Id.)

The Plaintiff continues to be housed in the same cell.  He asked Case Manager James, Sergeant Brantley, and Sergeant Bryte for a new cell due to the conditions of his confinement in the cell but they have not responded to his requests.  (Id. at 8).   The Plaintiff's cell has no working electrical outlets.  The Plaintiff has a CPAP breathing machine prescribed by a doctor for his narcolepsy.  According to the complaint, the CPAP machine prevents the Plaintiff from "stopping breathing during sleep, this reduces stress on [his] heart and damage, reduces risk of stroke and damage to [the Plantiff's] brain, reduces high blood pressure and risk to my heart and circulatory

system, helps reduce risk of possible death and permanent physical injury." (Id. at 12). The Plaintiff has asked James, Brantley, and Bryte to move the Plaintiff to a cell with electricity or to fix the electricity in the Plaintiff's current cell so that he can use his CPAP machine. The Plaintiff's requests have been ignored. (Id.)

While an inmate in protective custody segregation at SCCF, the Plaintiff, who is a Christian, was not allowed to gather in small groups for religious services and practice. (Id. at 13). Outside Christian leaders were not allowed access to protective custody inmates to hold services with inmates individually or in small groups, although prison policy permits such gatherings.

## IV. Analysis

### A. Section 1983 official capacity claims for monetary damages

The complaint does not specify in what capacities the Defendants are sued. In any event, § 1983 claims for monetary damages against any individual Defendant in his or her official capacity are barred by the Eleventh Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 71 (1989). Thus, any such claims must be dismissed.

### B. Slip and fall claims

The complaint alleges that Core Civic's negligence including the absence of a wet floor sign caused or contributed to the Plaintiff's August 2017 slip and fall and resulting injuries. The complaint names Core Civic as a Defendant to this claim as well as Warden Lindamood, Assistant Warden Bryant, and Assistant Warden of Operations Dodd. (Doc. No. at 14-15).

Core Civic is "[a] private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." Thomas v. Coble, 55 F. App'x 748, 748 (6th Cir. 2003) (citing Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996)); see also

Parsons v. Caruso, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons. Thomas, 55 F. App'x at 748–49; Street, 102 F.3d at 817–18; Johnson v. Corr. Corp. of Am., 26 F. App'x 386, 388 (6th Cir. 2001). Core Civic "cannot be held liable under a theory of respondeat superior." Braswell v. Corr. Corp. of Am., 419 F. App'x 622, 627 (6th Cir. 2011).

To prevail on a § 1983 claim against Core Civic, the Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. Id. Here, the complaint only alleges that Core Civic acted negligently by failing to clean the floors and failing to place a caution sign alerting inmates of the wet floor. (See Doc. No. 1 at 14)("I fell due to Core Civic's negligents [sic] in keeping the pod Gemini B clean and safe during a lockdown."). Allegations of negligence, however, are insufficient to entitle a § 1983 plaintiff to relief. Estelle, 429 U.S. at 105-06. The complaint fails to allege that the Plaintiff's injuries were caused by action taken pursuant to a Core Civic official policy or custom, which is required for the Plaintiff to state a claim upon which relief can be granted. See Thomas, 55 Fed. Appx at 749 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Consequently, the Court finds that the complaint fails to state an Eighth Amendment claim based on the negligence of Core Civic with regard to the wet floor.

With respect to Defendants Lindamood, Bryant, and Dodd, the Plaintiff's claims are based on these Defendants' purported ability to "stop violations" of the Plaintiff's civil rights due to their supervisory authority. (Doc. No. 1 at 16). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v.

Iqbal, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." Iqbal, 556 U.S. at 676. There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates. See Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).

The complaint does not allege that either Lindamood, Bryant, or Dodd was directly responsible for the wet floor or the lack of a caution sign, nor can any such allegations be liberally construed against Lindamood, Bryant, or Dodd. Neither does the complaint allege that these Defendants "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending" party. Id. In addition, as noted above, negligence is insufficient to support a § 1983 action. See Smoak v. Hall, 460 F.3d 768, 785 (6th Cir. 2006). Consequently, the complaint fails to state § 1983 claims upon which relief can be granted as to Defendants Lindamood, Bryant, and Dodd based on supervisory liability.

**B.     Medical and mental health care claims**

First, the complaint alleges that Core Civic and Dr. Steadman, SCCF pscyhiatrist, failed to provide the Plaintiff with proper medical and mental health treatment after his suicide attempt in January 2018. Failure to provide medical care, including care for mental health conditions, may give rise to a violation of a prisoner's rights under the Eighth Amendment. The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v.

Gamble, 429 U.S. 97, 104 (1976); Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994).

A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. Rouster v. Cnty. of Saginaw, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." Id. (quoting Farmer, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id.

Complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief. Estelle, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. Id. at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered as a consequence of such alleged denial. See Thaddeus-X v. Blatter, 175 F.3d 378, 401 (6th Cir. 1999).

Here, the complaint alleges that Dr. Steadman and Core Civic failed to provide proper care to the Plaintiff after he attempted suicide and returned to SCCF after receiving treatment at an outside hospital. For purposes of the required PLRA screening, the Court finds that the medical and mental health problems resulting from the Plaintiff's suicide ideation and attempt constitute a sufficiently serious medical need. See Rouster, 749 F.3d at 446. As to Dr. Steadman's state of

mind, the complaint alleges that, upon the Plaintiff's return from the hospital to the prison medical clinic "for observation," she told the Plaintiff that he "was alright and was just trying to accomplish a goal," without seeing the Plaintiff or administering any kind of mental health evaluation. (Doc. No. 1 at 6). She then called for the transit van and "said it was alright to transfer" the Plaintiff to HCCF. (Id.) The Court finds that these allegations, "if true, [c]ould show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [she] did in fact draw the inference, and that [she] then disregarded that risk." Id. Consequently, the Court finds that the complaint sets forth non-frivolous Eighth Amendment claims against Dr. Steadman based on the inadequacy of mental and medical health treatment with regard to the incident in question.

As to Core Civic, the law is settled that actions brought against state actors cannot be maintained under § 1983 on a theory of respondeat superior. See e.g., Monell v. Dept. of Social Serv's of The City of New York, et al., 436 U.S. 658, 659, 691–95 (1978). The complaint does not allege that Core Civic was directly responsible for any of the alleged acts and/or omissions of its psychiatrist who allegedly failed to treat the Plaintiff's mental health needs, nor can any such claims be liberally construed against Core Civic. More particularly, the complaint does not allege that, with respect to this instance, Core Civic acted pursuant to a corporate policy or custom that violated the Plaintiff's constitutional rights. Consequently, Core Civic is not liable to the Plaintiff under the doctrine of respondeat superior regardless of what Core Civic's employee may or may not have done. Thus, the Court will dismiss this claim against Core Civic for failure to state a claim upon which relief can be granted.

With respect to Defendants Lindamood, Bryant, Dodd, Casteel, James, Brantley,

Deatherage, McClain, Bryte, Villanueva, Core Civic CEO, and Core Civic COO, the Plaintiff's claims are based on these Defendants' purported ability to "stop violations" of the Plaintiff's civil rights due to their supervisory authority and/or job title. (Doc. No. 1 at 8-12). The Plaintiff does not allege that any of these Defendants were directly responsible for the alleged lack of health care experienced by the Plaintiff after his 2018 suicide attempt, nor can any such claims be liberally construed against these Defendants. Neither does the complaint allege that these Defendants "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending" party. Id. Consequently, the complaint fails to state § 1983 claims upon which relief can be granted as to Defendants Lindamood, Bryant, Dodd, Casteel, James, Brantley, Deatherage, McClain, Bryte, Villanueva, Core Civic CEO, and Core Civic COO based on supervisory liability.

Next, with respect to the Plaintiff's allegations that Core Civic denied the Plaintiff proper medical treatment for the injuries he sustained in the August 2017 slip and fall incident, the complaint alleges that the Plaintiff received medical attention immediately after the fall including an x-ray, and prison doctor Solado prescribed medications and therapy for the Plaintiff. The complaint alleges, however, that the Plaintiff did not receive all the of x-rays, therapy, and medication prescribed by Dr. Solado because Core Civic denied Dr. Solado's requests.

For purposes of the required PLRA screening, the Court finds that the injuries sustained by the Plaintiff during the 2017 slip and fall incident constitute sufficiently serious medical needs. See Rouster, 749 F.3d at 446. As stated above, the law is settled that actions brought against state actors cannot be maintained under § 1983 on a theory of respondeat superior. See e.g., Monell v. Dept. of Social Serv's of The City of New York, et al., 436 U.S. 658, 659, 691–95 (1978). Here, however, the complaint alleges that Core Civic is directly responsible for the denial of the Plaintiff's x-rays

and therapy that Core Civic's own doctor prescribed not once but twice for the Plaintiff. (Doc. No. 1 at 15). Although it is unclear whether the Plaintiff ultimately can prevail on this claim, for purposes of the required PLRA screening, the Court finds that the allegations of the complaint state a non-frivolous, actionable Eighth Amendment claim against Core Civic under § 1983 regarding the medical treatment for his slip and fall injuries.

**C.    Transfer to another facility claims**

The complaint alleges claims against multiple Defendants based on the Plaintiff's transfer from SCCF to HCCF. However, inmates have no constitutional right to be confined in any particular prison. Olim v. Wakinekona, 461 U.S. 238 (1983); Hewitt v. Helms, 459 U.S. 460, 468 (1983)(superseded by statute on other grounds); Meachum v. Fano, 427 U.S. 215, 224 (1976); Beard v. Livesay, 798 F.2d 874, 876 (6th Cir. 1986). Thus, the complaint fails to state § 1983 claims upon which relief can be granted against any Defendant based on the Plaintiff's transfer to HCCF because he has no constitutional right to choose his site of imprisonment.

**D.    Failure to provide grievances forms and failure to respond to grievances**

Some of the Plaintiff's § 1983 claims are premised on a Defendant's response, or lack of response, to the Plaintiff's grievances. However, a plaintiff cannot premise a § 1983 claim on allegations that the an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place. See Hewitt v. Helms, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995)); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).

The complaint also alleges that one or more Defendants failed to provide the Plaintiff with

grievance forms upon his request. Filing grievances through an inmate grievance process is protected conduct. See Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000). However, a Defendant's withholding of a grievance form, if it occurred, would not "deter a person of ordinary fitness from continuing to engage in that conduct," Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999) (en banc), because copies of grievances are not required to be attached to a federal complaint. Indeed, the Plaintiff filed his complaint without incident. The Plaintiff has not alleged any harm resulting from the alleged withholding of grievance forms. In short, since a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the Plaintiff's claims based on any Defendant's failure to respond to the Plaintiff's grievances or failure to provide grievance forms do not state claims upon which relief can be granted. All such claims will be dismissed.

### E. Retaliation claims

The complaint alleges that Dr. Steadman retaliated against the Plaintiff for his suicide attempt by failing to provide him with proper medical and mental health treatment. The complaint also alleges that an unidentified SCCF corrections officer placed the Plaintiff in a cell with a wet floor covered in broken glass without shoes for two hours as retaliation for having attempted suicide in an effort to thwart his transfer to HCCF. As with many of the Plaintiff's other claims, the complaint names additional Defendants whose direct involvement in the alleged wrongful behavior is not described; the claims against these Defendants appears to be based only on their supervisory positions or job titles.

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. Thaddeus-X, 175 F.3d at 388 . To establish a prima

facie case of retaliation within the context of § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. Id. at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than de minimis harm resulting from it. See Ingraham v. Wright, 430 U.S. 651, 674 (1977); Thaddeus-X, 175 F.3d at 396.

With respect to Dr. Steadman, the Court finds that the claims against Dr. Steadman are not frivolous, whether construed as an Eighth Amendment deliberate indifference to serious medical needs claim or as a First Amendment retaliation claim premised on the inadequate medical care provided. However, with respect to the unidentified corrections officer, the Court finds that the allegations of the complaint fail to allege more than de minimis harm resulting from the claimed retaliatory acts. See Ingraham, 430 U.S. at 674 (1977); Thaddeus-X, 175 F.3d at 396. The complaint fails to allege that the Plaintiff suffered any harm as a result of being housed in his cell for two hours without shoes. Consequently, the Court finds that the complaint fails to state a colorable retaliation claim against the unidentified corrections officer but states an actionable retaliation claim under § 1983 against Dr. Steadman.

**F. Conditions of confinement**

The complaint describes the Plaintiff's cell at SCCF as wet with broken glass on the floor, a loose window that permits outside air to seep in, and exposed live electrical wires. The Constitution does not protect a prisoner from unpleasant prison experiences. Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987). Nor does the Constitution mandate comfortable conditions of

confinement. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 101 S. Ct. 2400, 69 L.Ed.2d 59 (1981). However, the Eighth Amendment of the United States Constitution imposes an obligation to provide prisoners with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. <u>Grubbs v. Bradley</u>, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. <u>Bellamy v. Bradley</u>, 729 F.2d 416 (6th Cir. 1984).

Construed liberally, the <u>pro se</u> complaint alleges that the conditions of the Plaintiff's confinement at SCCF constituted cruel and unusual punishment in violation of the Eighth Amendment. However, with respect to the conditions of his confinement, the Plaintiff has not claimed any injury or harm as a result of the alleged unpleasant conditions. Without an allegation of injury or harm, a plaintiff does not state a viable Eighth Amendment claim. <u>See Moore v. Merchant</u>, No. 5:13CV-P81-R, 2013 WL 6590395, at *4 (W.D. Ky. Dec. 16, 2013)(finding that, "[i]n any event, Merchant does not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.'"). Furthermore, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." <u>Ivey v. Wilson</u>, 832 F. 2d 950, 954 (6th Cir. 1987). Consequently, the Court finds that the complaint fails to states colorable Eighth Amendment claims based on the allegations pertaining to the conditions of the Plaintiff's confinement in segregation. These claims will be dismissed. 28 U.S.C. § 1915A.

### G. Religious practice claims

The complaint alleges that the Plaintiff, a Christian, was denied the right to practice his religion while incarcerated at SCCF and housed in protective custody. Prisoners have a First Amendment right to practice their religious beliefs. Hudson v. Palmer, 468 U.S. 517, 523, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984). Prisoners must be provided "reasonable opportunities" to practice their religion. Id. Nevertheless, an inmate's First Amendment right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations reasonably related to legitimate penological interests. Bell v. Wolfish, 441 U.S. 520, 549-51, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979)(limited restriction against receipt of hardback books under certain circumstances was a rational response to a security problem and did not violate the First Amendment rights of inmates); Pollack v. Marshall, 845 F.2d 656, 658-60 (6th Cir.1988) (plaintiff who challenged regulation limiting the length of prisoners' hair did not demonstrate he was prevented from practicing his religion in ways other than being required to comply with the hair length regulation failed to state a constitutional violation).

The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs, nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular inmate; the internal administration of a correctional facility is a function legitimately left to the discretion of prison administrators. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979); Procunier v. Martinez, 416 U.S. 396, 405, 94 S. Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 104 L.Ed.2d 459 (1989).

The complaint alleges that, while housed in protective custody, the Plaintiff was not permitted to participate in any small group religious services, nor were outside religious leaders permitted to meet with the Plaintiff individually. The complaint does not explain how, without the ability to attend religious services, the Plaintiff had an alternative means of exercising his religion. For example, the complaint does not allege that Bibles or religious texts were available to inmates who requested them. In fact, the complaint alleges that the Plaintiff was prohibited from scheduling appointments for individual visits with religious ministers in lieu of attending group religious services. Based upon the Plaintiff's allegations, which the Court must accept as true for purposes of the required PLRA screening, the Court concludes that these allegations are sufficient to state a non-frivolous First Amendment claim for purposes of the required PLRA screening. The complaint identifies Lindamood, Bryant, Dood, Deatherage, Casteel, Core Civic, Core Civic COO, and Core Civic CEO as Defendants to this cause of action.

Here, construed liberally, the complaint alleges that the Plaintiff suffered harm because of an unconstitutional policy or custom of Core Civic: inmates housed in SCCF protective custody from September 23, 2017[1] to at least January 21, 2018 were not permitted to attend any religious services or otherwise practice their religious beliefs. Were the Plaintiff facing a motion to dismiss, his burden of proof would be much higher. He would need to show that Core Civic had an unconstitutional policy, that the policy was applied in the Plaintiff's case, and the policy was a "moving force" behind the denial of the Plaintiff's religious rights. See, e.g., Ezell v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:11–0405, 2012 WL 2601940, at *8 (M.D. Tenn. June 6, 2012) (report and recommendation), adopted, 2012 WL 2601936 (M.D.Tenn. July 5, 2012); Moffat v.

---

[1] The complaint states the beginning date is September 23, 2018, but this date appears to be a typographical error. (Doc. No. 1 at 13).

<u>Mich. Dep't of Corr.</u>, No. 09–14696, 2010 WL 3906115, at *9 n.11 (E.D. Mich. May 21, 2010) (allegation that "CMS had a policy of denying treatment in order to maximize profits" insufficient to survive motion to dismiss without supporting factual allegations) (report and recommendation), adopted, 2010 WL 3905354 (E.D.Mich. Sept. 27, 2010); <u>Crawford v. Mich. Dep't of Corr.</u>, No. 2:09–cv–7, 2010 WL 1424246, at *5 (W.D. Mich. Mar. 31, 2010) ("Plaintiff has pleaded no facts supporting his allegation that, pursuant to contract, Plaintiff's medical treatments were based upon cost concerns."); <u>Broyles v. Corr. Med. Servs., Inc.</u>, No. 08–1638, 2009 WL 3154241 (6th Cir. Jan. 23, 2009) (inmate's "bare allegation of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief"). However, the Plaintiff is not facing a motion to dismiss at this time; the Court is conducting the required PLRA screening of the Plaintiff's complaint, which is a lower burden for the Plaintiff to overcome in order for his claims to proceed.

The Court finds that the Plaintiff's allegations are sufficient to state a First Amendment claim based on the Core Civic policy that protective custody inmates are not permitted to attend religious services or otherwise practice their religion. Because the Plaintiff alleges the existence of a Core Civic policy or custom, the Court will not dismiss the other named Defendants at this time with regard to these claims as it is unclear what role, if any, these Defendants played in developing or implementing the alleged Core Civic policy or custom. Of course, the Plaintiff will bear the burden of supporting his allegations <u>as to each Defendant</u> with evidence as this case progresses. The Court simply finds that, for now, the Plaintiff's First Amendment claims against Core Civic, Core Civic's CEO and COO, Lindamood, Bryant, Dodd, Deatherage, McClain, and Casteel survive the required screening under the PLRA.

Although designation of "John Doe" or "Jane Doe" defendants is not favored, it is

permissible when the defendants' identities are not known at the time the complaint is filed, but may be determined through discovery.  See Berndt v. Tennessee, 796 F.2d 879, 882-84 (6th Cir. 1986). The Court concludes that it would be inappropriate to dismiss the complaint against the John or Jane Doe Defendants (Core Civic's CEO and COO) at this juncture because of the likelihood that the identities of these Defendants will be determined during discovery.

### H.    ADA Claims

According to the complaint, the Plaintiff has a disability and, as a result, a Limited Activity Notice from the prison medical staff stating that the Plaintiff cannot stand for more than fifteen minutes.  He also requires a shower chair and a CPAP machine.  The complaint alleges that an unidentified SCCF corrections officer and Sergeant Bryte violated the Plaintiff's rights under the ADA when they did not give the Plaintiff a shower chair and left him to stand for thirty minutes in the shower room.  The complaint further alleges that the Plaintiff's cell  at SCCF lacked working electrical outlets which prevented the Plaintiff from being able to plug in his CPAP machine and, despite the Plaintiff's efforts to be moved to another cell or for the outlets in his cell to be repaired, no one ever helped him.

Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* prohibits public entities from discriminating against a qualified individual with a disability on account of that disability in the operation of services, programs, or activities. 42 U.S.C. § 12131(1); Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998).   The ADA is applicable to state and local government entities, including prisons and county jail facilities.  See  Yeskey, 524 U.S. at 210 (holding that the term "public entity" includes prison facilities); Tucker v. Tenn., 539 F.3d 526, 529 (6th Cir. 2008).  Title II's implementing regulations provide that "[a] public entity shall make

reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." 28 C.F.R. § 35.130(b)(7).

To establish a prima facie case under the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participating in, being denied the benefits of, or being subjected to discrimination under the program solely because of his ability. Anderson v. City of Blue Ash, 798 F.3d 338, 357 (6th Cir. 2015). Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate § 12132. United States v. Georgia, 546 U.S. 151, 160 (2006)(holding that Title II of the ADA validly abrogated state sovereign immunity insofar as it created a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment).

The proper defendant to a suit under Title II of the ADA is the public entity or an official acting his or her official capacity. Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir. 2009). "Title II of the ADA does not, however, provide for suit against a public official in his individual capacity." Everson, 556 F.3d at 501 n.7; see also Williams v. McLemore, 247 F. App'x 1, 8 (6th Cir. 2007) ("[T]he ADA does not provide for personal liability for defendants sued in their individual capacities. . . . We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities."). Therefore, the Plaintiff's ADA claims against the named Defendants in their individual capacities must be dismissed.

Although the complaint does not specify whether the Defendants are sued in their individual or official capacities, given the liberal construction afforded to pro se complaints, and the

requirement that the Court construes all well-pleaded allegations in the light most favorable to the Plaintiff, the Court finds that the Plaintiff's allegations state an ADA claim against the Defendant public employees or supervisors in their official capacities, therefore, the Tennessee Department of Correction. See 28 C.F.R. § 35.133(a) (requiring public entities to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible and usable by persons with disabilities" as provided for by the ADA or the regulations implementing the ADA); see also Kutrip v. City of St. Louis, 329 Fed.Appx. 683 (8th Cir. 2009) (denying summary judgment where facts issue remained on ADA claim regarding jail officials' denial of disabled-accessible shower and shower chair to obviously disabled inmate); Doker v. Montgomery County Jail, No. 3:17-cv-00947, 2017 WL 3172745, at *3 (M.D. Tenn. July 26, 2017)(Trauger, J.)(on initial review under PLRA, finding a colorable ADA claim against the county based on inmate's confinement to cell not equipped to meet his needs while he was confined to a wheelchair); Schmidt v. Odell, 64 F. Supp.2d 1014, 1032 (D. Kan. 1999)(denying summary judgment on inmate's ADA claim against jail where plaintiff, a double amputee, was not provided a wheelchair and had to crawl and push himself about the jail on the floor; "The fact the plaintiff was actually able to use most of the jail services does not preclude his claim in light of the fact that he was able to do so only by virtue of exceptional and painful exertion which was contrary to physician's instructions concerning his disability."). Therefore, the Court finds that the Plaintiff's ADA claim against the Tennessee Department of Correction will proceed for further development.

## V.     Conclusion

As set forth above, the Court finds that the complaint states colorable Eighth Amendment deliberate indifference to medical needs claims pursuant to § 1983 against Core Civic pertaining to

the Plaintiff's slip and fall incident in August 2017 and against Dr. Steadman pertaining to the Plaintiff's suicide attempt in January 2018; First Amendment retaliation claims pursuant to § 1983 against Dr. Steadman pertaining to the Plaintiff's suicide attempt and subsequent medical treatment (or lack thereof) in January 2018; First Amendment religious practice claims pursuant to § 1983 against Core Civic, Lindamood, Bryant, Dodd, Deatherage, Casteel, and Core Civic CEO and COO; and ADA claims against the Tennessee Department of Correction. 28 U.S.C. § 1915A. These claims survive the required PLRA screening and shall proceed for further development.

However, the Plaintiff's remaining claims will be dismissed for failure to state claims upon which relief can be granted. Likewise, the Plaintiff's claims for monetary damages against any individual Defendant in his or her official capacity will be dismissed.

An appropriate Order will be entered.

_____

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE